UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLO GUILIANO CRESCI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PERKINS, *et al.*,<br><br>　　　　Defendants. | Case No.: 1:20-cv-00412-SAB (PC)<br><br>SECOND SCREENING ORDER GRANTING PLAINTIFF ONE FINAL OPPORTUNITY TO AMEND THE COMPLAINT<br><br>(ECF No. 30) |

Plaintiff Carlo Guiliano Cresci is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's amended complaint, filed August 31, 2020.

I.

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff names D. Perkins, correctional food manager, R. Milan, supervisor of building trades, J. Lines, plant operations manager, and Stu Sherman, Warden at California Substance Abuse Treatment Facility and State Prison, Corcoran, as Defendants.

On July 10, 2018, the Inmate Advisory Council spoke directed to correctional food manager, D. Perkins, and when asked about the leaking roof, Perkins stated that the administration, as well as Sacramento, was fully aware of the problem, but the issue of having it fixed was well above his paygrade. It is the food manager's responsibility to ensure the dining facilities are healthy and safe, and if not, to restrict use of the facility due to safety concerns. The responses were all validated and signed by correctional captain J. Ourique.

D. Perkins chose not to shut down the dining room even though he has been aware of the unsanitary conditions since 2018.

On December 12, 2018, Plaintiff submitted an administrative appeal due to the unsanitary conditions in the "echo" facility dining hall.  At the time of the submission, and up to the time of filing the complaint, the dining hall leaks profusely to the point of flooding.  During light and intermediate rains, staff would block off tables to restrict inmates from sitting at tables that had overhead leakage.  Although the tables were blocked off, this did nothing to address the flooding of the floor which was a safety hazard.  The excessive moisture from the flooding was promoting mold and attracting pest.  The leaking roof was also causing the interior tiles to deteriorate and fall to the floor.  To mitigate the problem, staff would remove the interior ceiling tiles which exposes the insulation and dust pets.  All of these problems were referenced in the appeal.

On February 20, 2019, building trades supervisor R. Milan called Plaintiff to an institutional phone and informed him that the roof of the dining facility had been fixed.  That evening, Plaintiff ate in the dining room and noted that all of the interior ceiling tiles had been replaced.  A few days later, on February 27, 2019, Plaintiff received a written response to the appeal which referenced the telephone call with R. Milan.  The appeal was partially granted in that the maintenance issues were supposedly addressed and everything appeared fixed.

Within a few months of the repairs, it rained and the dining room flooded and the ceiling tiles became saturated.  Plaintiff then submitted another administrative appeal while he was still housed at the "echo" facility.  The appeal was rejected under the guise that it contained voluminous unrelated documentation, despite the fact that Plaintiff merely referenced the prior appeal to alter them that the previous repairs did not work.  Several other inmates also filed administrative appeals regarding the conditions which were also rejected.

Plaintiff's appeals were meant to address that the dining facilities were being operated in unsafe conditions.  Staff continued to ignore these points stating they had made sufficient accommodations to keep the dining room safe and the dining facilities were due for repair.  Plaintiff's request that the dining facilities be closed until properly fixed was ignored.

1   On September 24, 2019, R. Milan wrote a typed response stating, "CSATF has not received an
2  estimated start date from facilities management at this time for roof replaced on facility F dining hall.
3  Plant operations has patched the roof and inspected the grid and ceiling tiles in the dining room
4  and removed any that may fall.  Plant operations does not have the authority to close the dining hall on
5  E yard."
6   Around April 2019, Plaintiff was moved to the lower level facility (of similar construction) and
7  began experiencing the same problems as the previous facility next door.  Both dining facilities were
8  built around the same time and are experiencing the same type of leaks, flooding, and falling tiles.
9   As of the admission of the amended complaint, August 24, 2020, Plaintiff is not aware of
10 whether "echo" facilities dining hall has been sufficiently repaired.
11  The same problems of the dining hall on "echo" yard became apparent when Plaintiff was
12 transferred to the "Frank" yard.  The same issues had been addressed several times through the Inmate
13 Advisory Council, and administrative staff continued to claim that the issues were scheduled for
14 repairs.
15  On March 5, 2020, Plaintiff was interviewed by correctional counselor Shaw who advised
16 Plaintiff that safety railings were installed and there was an emergency roof overlay repair scheduled
17 in the near future. Some dates later, Shaw wrote in his response that he had contacted plant operations
18 manager J. Lines and the roof was scheduled for full replacement on January 27, 2021.  The response
19 fully acknowledged that the dining facilities leaked so bad that flooding was a problem and the tables
20 were being restricted for use.

**III.**

**DISCUSSION**

**A.     Conditions of Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the

1  wanton and unnecessary infliction of pain. Morgan v. Morgensen, 465 F.3d at 1045 (citing Rhodes v.
2  Chapman, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of
3  legitimate penological purpose or contrary to evolving standards of decency that mark the progress of
4  a maturing society violate the Eighth Amendment. Morgan v. Morgensen, 465 F.3d at 1045
5  (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes v.
6  Chapman, 452 U.S. at 346.

7        Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,
8  clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.
9  2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in
10 prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d at 1045 (quotation marks
11 omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were
12 deliberately indifferent to a substantial risk of harm to his health or safety. Farmer v. Brennan, 511
13 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d
14 807, 812-14 (9th Cir. 2009); Morgan v. Morgensen, 465 F.3d at 1045; Johnson v. Lewis, 217 F.3d at
15 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

16       In Rhodes, the Supreme Court found that in order to state an Eighth Amendment claim, the
17 conditions must "inflict[] unnecessary or wanton pain or is grossly disproportionate to the severity of
18 crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. at 348-49. The Court cautioned
19 against finding violations based upon "an aspiration toward an ideal environment for long-term
20 confinement." Id. In addition, the Constitution does not mandate comfortable prisons. Id.

21       Courts have routinely concluded that "poorly maintained surfaces, wet floors, and leaky roofs"
22 do not generally pose a substantial risk of serious harm, and are instead claims fundamentally
23 sounding in negligence—which is insufficient to violate the Eighth Amendment as a matter of law.
24 See Pauley v. California, No. 2:18-cv-2595-KJN P, 2018 WL 5920780, at *4 n.1 (E.D. Cal. Nov. 13,
25 2018) (collecting cases). "Courts have reached this conclusion, even where the hazard has existed, and
26 been known to prison officials for years, and where the prisoner was required to use the dangerous
27 location, such as a bathroom." Id. at *4 (citing cases).
28

5

Plaintiff's allegations fail to give rise to a claim of deliberate indifference. More specifically, Plaintiff has not stated an Article III controversy for his allegations relating to the roof leaks, falling objects, risk of electrocution and/or vermin infestation. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Art. III, § 2.  To establish standing, a plaintiff must show (1) an injury in fact, meaning an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a sufficient casual connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  Plaintiff has not alleged that he suffered any injury as a result of the alleged conditions.  The mere fact that roof leaked causing flooding and occasionally ceiling tiles fell is insufficient to demonstrate injury.  Further, as to "echo" dining facility, Plaintiff acknowledges that he was transferred from that facility in April 2019 and he is not aware if repairs were conducted in that facility. General allegations about conditions of confinement do not demonstrate a case or controversy. Lujan, 504 U.S. at 574-75 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case of controversy.").  Moreover, Plaintiff acknowledges that he received responses to his administrative appeals.  In addition, Plaintiff acknowledges that R. Milan indicated that the roof in "echo" facility dining hall had been fixed.  In addition, Plaintiff acknowledges that he was advised that the roof is scheduled for full replacement on January 27, 2021, and tables were being restricted from use if considered a danger.  This does not demonstrate deliberate indifference, but rather a conscious effort to try to solve the problem to the best of its ability.  In sum, Plaintiff fails to allege sufficient facts or exacerbating circumstances that could elevate a potential negligence claim into a federal cause of action. Accordingly, Plaintiff fails to state a cognizable claim for relief.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief.  The Court will grant Plaintiff one final opportunity to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.

2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).  Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint;
3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **September 28, 2020**

UNITED STATES MAGISTRATE JUDGE